UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRANCISCO RAMOS,<br><br>Defendant. | Case No. 1:01-cr-00098-BLW<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

### INTRODUCTION

Before the Court is Defendant Francisco Ramos' Motion for Compassionate Release. Dkt. 442. For the reasons explained below, the Court will deny the motion.

### BACKGROUND

In November of 2001, Ramos pled guilty to multiple counts of conspiracy to distribute methamphetamine and/or marijuana, drug distribution, and use of a firearm during and in relation to a drug trafficking crime. *See* Dkt. 145. In May of 2002, the Court sentenced him to a high-end guideline sentence of 466 months' imprisonment, five years of supervised release, a special assessment of $900, and a fine of $15,000.00. *Judgment*, Dkt. 226. Since then, the Court has reduced Ramos' sentencing twice. In December of 2015, the Court reduced his sentence to 406

months pursuant to 18 U.S.C. § 3582(c)(2) because his guideline range was subsequently lowered by the United States Sentencing Commission. *See* Dkt. 417. And in March of 2024, the Court further reduced Ramos' sentence from 406 months to 385 months pursuant to the retroactive "status points" amendment (Amendment 821) to the Sentencing Guidelines. Dkt. 447.

Ramos has filed two motions for compassionate release in this case. First, in April of 2021, he sought early release based upon the purported "stacking" of his mandatory minimum sentences and "the extreme health risks posed by the spread of Covid-19 disease throughout the Bureau of Prisons." Dkt. 430. The Court denied the motion because Ramos had not exhausted his administrative remedies. Dkt. 434 at 3. Having exhausted his administrative remedies, Ramos is now back before the Court seeking "immediate release" for the same reasons as last time: the "stacking" of his mandatory minimum sentences and the "extreme health risks" of Covid-19. Dkt. 442. Ramos' Motion is fully briefed and ripe for decision.

## LEGAL STANDARD

Ramos seeks compassionate release under 18 U.S.C. 3582(c)(1)(A), which provides a narrow exception to the general rule that courts cannot modify sentences of imprisonment. To grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE - 2

administrative remedies. *Id*. If the exhaustion requirement is met, the Court must determine whether the defendant has shown that "extraordinary and compelling reasons warrant such a reduction." *Id.*; *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021). The defendant bears the burden of establishing that extraordinary and compelling reasons exist to justify compassionate release. *See United States v. Greenhut,* Case No. 2:18-CR-00048-CAS–1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998)). Finally, the Court must consider whether the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of early release. *United States v. Keller*, 2 F.4th 1278, 1283–84 (9th Cir. 2021).

## ANALYSIS

Ramos has exhausted his administrative remedies and his motion is properly before the Court. *See Motion*, Ex. A, Dkt. 442-1. Turning to the Section 3553(a) factors, however, the Court concludes that early release is not warranted. Ramos has not shown how a sentence reduction is justified considering the nature and circumstances of the offense or his history and characteristics. Nor has he shown that early release would adequately reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). Instead, Ramos relies upon broad references to the risks of

contracting Covid-19 and the "sentencing disparity created by the changed penalty structure under 924(c)." Neither constitutes an extraordinary and compelling reason for early release in this case.

1. **The risk of contracting Covid-19 does not constitute an extraordinary or compelling reason to grant Ramos early release.**

    Ramos first points to the spread of Covid-19 in BOP facilities. But, while many federal prisoners were released from custody during the pandemic, those inmates consistently possessed high-risk factors which made contracting the virus especially dangerous. *See, e.g.*, *United States v. Swanson*, Case No. 2:18-cr-00294 BLW, 2020 WL 5549142 (D. Idaho Sept. 16, 2020). Ramos has not shown that he is at a heightened risk of complications from Covid-19, especially considering that he is fully vaccinated against the virus. *Gov.'s Resp.* at 1 & 5, Dkt. 444. A generalized risk of contracting Covid-19—particularly at this late stage in the pandemic—does not constitute an extraordinary or compelling reason to release Ramos from custody. *See* Pub. L. No. 118-3 (2023) (terminating national emergency arising from Covid-19 pandemic); *see also Gov.'s Resp.* at 1, Dkt. 444 ("there are currently only 13 of 3,307 inmates at FCI Fort Dix that have confirmed active cases").

2. **The modification of law related to "stacking" mandatory minimums does not warrant early release in this case.**

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE - 4**

Ramos next claims that the "changed penalty structure under 924(c)" created "sentencing disparities" that constitute extraordinary and compelling circumstances warranting early release. *Motion* at 2, Dkt. 442. The Court understands Ramos to be referencing Section 403 of the First Step Act (FSA), which bars prosecutors from "stacking" five- and twenty-five-year mandatory minimum sentences in certain Section 924(c) cases. The Court does not agree, however, that the enactment of Section 403 supports Ramos' request for release.

Before the FSA was enacted in 2018, 18 U.S.C. § 924(c) imposed a twenty-five-year mandatory minimum penalty for each "second or subsequent conviction" under Section 924(c). The statute also required that the twenty-five-year mandatory minimum be "stacked" upon—that is, run consecutively to—any other term of imprisonment imposed. In 1993, the United States Supreme Court interpreted Section 924(c)'s twenty-five-year mandatory minimum and stacking requirements to apply even when a defendant's initial and subsequent convictions arose in the very same case. *Deal v. United States*, 508 U.S. 129 (1993). In other words, a first-time offender who was charged in one indictment with two or more violations of Section 924(c) could be subject to consecutive five- *and* twenty-five-year mandatory minimums. *Id.*

Section 403 of the FSA effectively overruled the Supreme Court's decision

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE - 5**

in *Deal* and established that the twenty-five-year mandatory minimum for subsequent offenses applies only when the latter violation occurs *after* the prior conviction under Section 924(c) has become final. Pub. L. No. 115–391 (2018); *see also United States v. Davis*, 588 U.S. 445, 450 n.1 (2019) (describing the impact of Section 403). That modification substantially affected the mandatory minimum for many Section 924(c) defendants and created significant sentencing disparities between defendants who were sentenced at the mandatory minimum before and after the FSA's passage. To minimize such disparities, many federal courts have reduced the sentences of individuals who were sentenced at the mandatory minimum *before* Section 403 became law. *See United States v. Owens*, 996 F.3d 755, 762–63 (6th Cir. 2021) (collecting cases).

But the enactment of Section 403 of the FSA does not bear on the sentence imposed in this case. At sentencing, the Court explained that Ramos was receiving the "benefit of reduced terms on the mandatory consecutive sentences because he was not advised properly . . . at the plea hearing as to what the maximum penalty could be." *Sentencing Tr.* at 28:9–17, Dkt. 444-1. If Ramos had been properly advised, "the minimum term would have been 25 years" for Count Six and Count Twelve, but instead, he received mandatory minimums of five years on each. *Id.*; *see also PSR* ¶ 195, Dkt. 448 ("Because Counts Six and Twelve are considered

subsequent convictions, the minimum term of imprisonment for each count, pursuant to 18 § 924(c)(i)(C), is at least 25 years consecutive to any other sentence imposed. However, defendant was not notified of the enhanced penalties at the plea proceedings. In light of Ninth Circuit case law, the less egregious penalties sections will be ascribed."). Since Ramos was not subject to the consecutive twenty-five-year mandatory minimum, Congress' subsequent modification of that provision does not bear on the sentence in this case.

It is also significant that the Court did not sentence Ramos at the bare mandatory minimum. Instead, emphasizing Ramos' "very hard-core" involvement in drug trafficking and his "aggressive" and "somewhat violent" use of weapons, the Court sentenced Ramos to a high-end guideline sentence well above the applicable mandatory minimum. Ramos has not pointed to any facts unknown to the Court at the time of sentencing, nor any factors the Court failed to consider when sentencing above the mandatory minimum. The Court acknowledged that imposing such a lengthy sentence was "not an easy thing to do," but nevertheless found it appropriate under the "very concern[ing]" circumstances of this case. *Sentencing Tr*. at 31:3–12, Dkt. 444-1.

In sum, Congress' limitation on the stacking of twenty-five-year mandatory minimum penalties under Section 924(c) has no bearing on the sentence imposed

in this case. Twenty-five-year minimums were not applied here, and in any case, the Court found that a sentence *above* the mandatory minimum was necessary.

### 3. The § 3553(a) factors do not support early release.

Ramos also explains that, while incarcerated, he has "worked very hard to change [his] life to the better, to rehabilitate [himself] to become a good man, and to improve [himself] in All area's of life." *Motion* at 2, Dkt. 442. That is all well and good, but his success in prison does not, alone, constitute an extraordinary and compelling reason for early release.

Ramos was given a lengthy sentence because he engaged in abhorrent conduct. He was an organizer and leader in a widespread criminal drug-trafficking operation. PSR ¶ 199, Dkt. 448. He distributed a substantial quantity of drugs. *Id.* ¶ 196. And he used firearms on numerous occasions to threaten others in furtherance of the drug-trafficking operation. *Id.* ¶¶ 49, 51–54, 58, 79, 88, 119, 124, & 129; *see also Sentencing Tr.* at 21:22–24, Dkt. 444-1 (adopting PSR as the Court's own findings). Although the Court recognized the severity of the sentence, it nevertheless found it necessary, explaining:

> The Court has imposed a sentence at the top of the guideline range. And I must say that normally I would not do that where already the guideline range were so substantial, but this case, I think, presentenced [sic] some unusual features . . . the Court is very concerned, from its review of the pre-sentence report, that what was depicted was someone who was involved in a very hard-core

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE - 8**

> fashion in drug trafficking, the use of firearms to facilitate drug trafficking, and that given all these circumstances, a sentence at the high end of the guideline range was appropriate . . . [o]n balance, I felt that a sentence at the high end of the guideline range, after recognizing the defendant's full cooperation and the significant role he played in the Ortiz prosecution, was an appropriate sentence and adequately reflects the seriousness of the offense he committed, his criminal history and background, and also will appropriately address the Court's concern that the defendant and others like him not involve themselves in this type of criminal activity in the future.

*Gov.'s Resp.*, Ex. A at 33–34, Dkt. 444-1.

Ultimately, the Court found its sentence necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide Ramos with needed correctional treatment. 18 U.S.C. § 3553(a)(2)(A)–(D). Ramos has not shown that a sentence of time-served would adequately account for these considerations, and the Court believes it would not.

**4.   Conclusion**

Ultimately, the Court will deny Ramos' motion for two independent reasons. First, he has not pointed to any "extraordinary and compelling circumstances" justifying early release. As explained, neither generalized risks of contracting Covid-19 nor the sentencing disparities resulting from the enactment of Section 403 of the FSA meet that demanding threshold. And second, the Section 3553(a)

factors do not weigh in favor of early release. Both of these grounds serve as independent bases for the Court's decision to deny Ramos' request for compassionate release.

## ORDER

**IT IS ORDERED** that Defendant Francisco Ramos' Motion for Compassionate Release (Dkt. 442) is **DENIED**.

DATED: May 8, 2024

_____
B. Lynn Winmill
U.S. District Court Judge